TRANSFER NO. 1.

FLOAT NO. 23.

DAVIS v. TRANSFER NO. 1 AND FLOAT NO. 23.

(District Court, S. D. New York. January 5, 1893.)

SALVAGE—BREAKING SHAFT IN HELL GATE—PROBABILITY OF DAMAGE.

Where a tugboat broke her shaft in Hell Gate, and, signaling for assistance, was taken into quiet water by libelant's steamboat, the service lasting about 20 minutes, it was held that in the strong tide of Hell Gate the liability of the tug to go ashore, if unaided, was a certain danger, and that the service rendered was therefore a salvage service, for which $1,800, upon a value of $46,000, should be awarded.

In Admiralty. Libel by Charles W. Davis against the steam tug Transfer No. 1 and Float No. 23 to recover salvage for assistance rendered to them by the Mary E. Gordon. Decree for libelant.

George A. Black, for libelant.

Page & Taft, for claimants.

BROWN, District Judge. In the afternoon of April 2, 1892, as the steam tug Transfer No. 1 was going through Hell Gate against the ebb tide, with a loaded car float lashed to her port side, she became disabled by the breaking of her shaft, when a little above the Astoria ferry, while going near the shore in the eddy, which there sets up towards Hallett's point. She signaled for assistance, and the libelant's small freight and passenger steamer Mary E. Gordon, which was a short distance below, and on one of her trips from New York to Mamaroneck, came up at once in response to the signals and threw lines to the tug and the float, and in about 20 minutes guided them into the still water below Flood rock between the two ebb currents, where the tug and float were taken in charge by a sister transfer of the claimants' line.

Though the service was short, it was, I think, of considerable importance. Had there been no danger either of stranding on Flood rock, or on Blackwell's island, or of collision with other approaching vessels, there was little reason for the signals given by the tug for a service which, as must have been known, would be of a salvage character. Further accident and loss were not indeed certain; but as the result could not be foreseen under the peculiar circumstances of that dangerous vicinity, the liability and danger of loss were certain. I am persuaded that in the eddy testified to by the claimants, as well as by the libelant's witnesses, the tug and float must have reached very near, if not quite, to the upper end of the eddy very near Hallett's point, before they were worked out into the stream; and that they could not otherwise, considering the comparatively weak power of the Gordon for towing purposes, and the strong ebb tide, have reached the point they did reach between the currents below Flood rock.

The value of the tug, float, and contents was about $46,000; but the loss which might be reasonably anticipated from stranding would not in any probability involve nearly so much. The value of the

Mary E. Gordon and her cargo was from $16,000 to $19,000. Her service made her late for the tide at Mamaroneck, and delayed her about eight or nine hours in reaching her dock; and the deviation increased her responsibilities by affecting her insurance. The service, however, was not one involving any great danger to herself, though she suffered some damage to her house.

Taking all the circumstances into account, I think that $1,800 will be a suitable award.

A decree may be entered accordingly, with costs.